UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

D.P., *individually and on behalf of* S.P., *a child with a disability*,

                              Plaintiff,

                  -v.-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                              Defendant.

---

21 Civ. 27 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff D.P., individually and on behalf of S.P., a child with a disability, brings this action pursuant to a provision of the Individuals with Disabilities Education Act (the "IDEA") that allows courts to award attorneys' fees and costs, and pursuant to 42 U.S.C. § 1983, seeking equitable relief. Pending before the Court now is Plaintiff's motion for summary judgment, seeking attorneys' fees and costs for work performed by Plaintiff's counsel, the Cuddy Law Firm ("CLF"). As set forth in the remainder of this Opinion, Plaintiff's motion is granted in part and denied in part.

<h3 style="text-align:center">BACKGROUND[1]</h3>

## A.    The Parties and the Administrative Proceedings

S.P. is a child with a disability as defined by the IDEA, 20 U.S.C. § 1401(3)(A) (Pl. 56.1 ¶¶ 4, 8), and D.P. is S.P.'s parent (*id.* at ¶ 5). Defendant

---

[1]    The facts set forth in this Opinion are drawn from the parties' submissions in connection with Plaintiff's summary judgment motion, including Plaintiff's statement of undisputed material facts pursuant to S.D.N.Y. Local Civil Rule 56.1 ("Pl. 56.1" (Dkt. #14)), and Defendant's Rule 56.1 counterstatement ("Def. 56.1" (Dkt. #21)). The Court also draws from various declarations submitted by the parties and their exhibits, which declarations are cited using the convention "[Name] Decl." or "[Name] Reply Decl."

New York City Department of Education ("Defendant" or "DOE") is a local educational agency as defined by the IDEA, 20 U.S.C. § 1401(19).  (*Id.* at ¶ 6).

The timeline of the administrative proceedings is detailed in Plaintiff's opening memorandum (*see* Pl. Br. 2-5), and is generally not disputed by Defendant.  In or about August 2018, Plaintiff consulted with, and subsequently retained, CLF to represent her regarding the educational needs of S.P.  (Cuddy Decl., Ex. A).  On January 29, 2019, CLF filed an 11-page due process complaint on Plaintiff's behalf, alleging a denial by Defendant of a free appropriate public education ("FAPE") to S.P. during the 2017-2018 and 2018-2019 school years and alleging numerous IDEA violations by Defendant that contributed to that denial.  (*Id.* at ¶¶ 158-159 & Ex. I).  After abortive settlement efforts (*see id.* at ¶¶ 164-167), the parties participated in a due process hearing before an impartial hearing officer (the "IHO") on October 9, 2019, during which Plaintiff introduced 28 exhibits and presented testimony from three witnesses, and Defendant introduced 14 exhibits and called no

---

Citations to a party's Rule 56.1 statement incorporate by reference the documents cited therein.  *See* Local Civil Rule 56.1(d).

For ease of reference, the Court refers to Plaintiff's opening brief as "Pl. Br." (Dkt. #18); Defendant's opposition brief as "Def. Opp." (Dkt. #20); and Plaintiff's reply brief as "Def. Reply" (Dkt. #22).

The Court pauses here to observe that Plaintiff offers extensive legal and factual arguments (and not merely exhibits) in the declarations of her attorneys.  (*See, e.g.,* Dkt. #15 (Cuddy Decl.), 16 (Kopp Decl.), 17 (Murray Decl.), 23 (Cuddy Reply Decl.)).  The Court sees these documents for what they are, *i.e.*, poorly-disguised efforts to circumvent the page limits set by the Federal Rules of Civil Procedure.  Plaintiff's counsel is warned that the Court will not countenance similar gamesmanship in future cases.

witnesses (*id.* at ¶¶ 172-176).  The IHO described the respective positions of the parties as follows:

> At the hearing table … [Plaintiff] withdrew their claims with respect to compensatory remedy for the 2017-18 year, and they presented no witnesses and made no argument in support of such a claim (and so, the record would not support recovery against such a claim).  The district acknowledges that the student did not receive a program or services pursuant to its June 11, 2018 [program].  As a result, it makes no challenge to the related services claim for the summer 2018 that was not received mandate [*sic*] (as well as the first four weeks of 2018-19's 10-month school year during which the student was not receiving services and was not in school)[.]

(*Id.*, Ex. A at 60).

On October 10, 2019, the IHO issued a 41-page Findings of Fact and Decision ("FOFD"), concluding that Defendant had denied S.P. a FAPE for the 2018-2019 school year and awarding relief that included placement of S.P. at the private school identified unilaterally by D.P.; reimbursement of D.P. for any out-of-pocket expenses for that placement; direct payment by Defendant of the remaining school and service expenses for S.P.; and compensatory services to include counseling, occupational therapy, and speech-language therapy.  (*Id.* at ¶¶ 50-54, 177-179; *see generally* Cuddy Decl., Ex. A at 58-99).  The first 36 or so pages of the IHO's decision addressed general IDEA principles not specific to the facts of this case.  However, when the IHO did turn to the procedural history of this case, he criticized DOE for the position taken at the due process hearing: "The district has failed to make an affirmative showing of any sort with

respect to its burden for the challenged year, without conceding the case as a whole, a notion that is, at best, problematic." (*Id.* at 93).[2]

Defendant did not appeal from the IHO's decision. (Cuddy Decl. ¶ 55). However, there remained the issue of implementation of the IHO's decision. According to Plaintiff's counsel, counsel was deeply involved in these efforts, which spanned the time frame of the decision's issuance on October 10, 2019, through July 2021. (*Id.* at ¶ 181).

## B.   The Federal Proceedings

On July 21, 2020, Plaintiff, through counsel, submitted a demand for attorneys' fees to Defendant's Office of Legal Services. (Pl. 56.1 ¶ 16; Cuddy Decl. ¶¶ 84-87). When no substantive response was received, Plaintiff filed the instant action, seeking attorneys' fees and costs, as well as reimbursement of

---

[2]   The IHO further observed that:

> The scales of justice can't be balanced when the decision-maker is presented with only one pan. The district does itself a disservice when it concedes ["]Prong 1" [*i.e.*, whether the student's individualized education program, or "IEP," was developed according to IDEA's procedural and substantive requirements] because it renders the decision-maker unable to assess the reasonableness of the family's decision to reject the district's offer and seek self-help instead. The failure to offer free appropriate public education in the least restrictive environment is not an on/off switch, amenable to only two positions. It is, rather, a variable continuum of falling short, ranging from a near[-]miss all the way down to no offer at all. Because these cases are not about reimbursement as an end in itself, but about the parties' capacity to work together in a manner contemplated by the law that has created the entitlements to free appropriate public education and least restrictive environment, when the district concedes Prong 1 and declines to present any case at all about its efforts to serve the child, it forces the decisionmaker to view those efforts in the starkest possible terms: as though they simply did not exist.

(Cuddy Decl., Ex. A at 95)

$500 in out-of-pocket tuition expenses incurred by Plaintiff.  (Dkt. #1; Cuddy Decl. ¶ 86).

Plaintiff consented to an extension of time for Defendant to respond, and provided information relevant to the fee demand.  (Murray Decl. ¶¶ 7-10).  The parties then agreed that additional discovery would not be necessary and, when no settlement offer emerged from Defendant, proceeded to motion practice on Plaintiff's request for attorneys' fees and costs.  (*Id.* at ¶¶ 11-16).  Plaintiff's opening memorandum and supporting declarations and materials were filed on July 30, 2021.  (Dkt. #13-18).[3]  Defendant's submissions in opposition were filed on August 20, 2021.  (Dkt. #20-21).  Plaintiff's reply submissions were filed on August 30, 2021.  (Dkt. #22-23).

## APPLICABLE LAW

**A.   Applicable Law**

**1.   Motions for Summary Judgment Under Fed. R. Civ. P. 56**

Pursuant to Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[3]     By letter dated August 6, 2021, Plaintiff's counsel advised the Court that the one remaining issue concerning the implementation of the IHO's decision — the reimbursement of $500 in tuition expenses incurred by D.P. — had been resolved.  (Dkt. #19 ("Therefore, Plaintiff's claim for implementation of relief awarded to Plaintiff as a result of the administrative proceeding is resolved and Plaintiff is solely seeking attorneys' fees incurred in the administrative proceeding as well as this instant federal action.")).

to judgment as a matter of law." *Id.*; *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322-23 (1986).[4]  A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted).  A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

While the moving party "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Celotex*, 477 U.S. at 323), the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).  Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Parks Real Est. Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

---

[4]     The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").  The Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

2.      **Attorneys' Fees Under the IDEA**[5]

a.      **The Purpose of the Fee-Shifting Provision**

"The IDEA aims 'to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs.'" *A.R. ex rel. R.V.* v. *N.Y.C. Dep't of Educ.*, 407 F.3d 65, 72 (2d Cir. 2005) (quoting 20 U.S.C. § 1400(d)(1)(A)).   To that end, the statute provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(i).  The fees awarded "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished.  No bonus or multiplier may be used in calculating the fees awarded[.]"  *Id.* § 1415(i)(3)(C).

The construct of a "reasonable attorney's fee" has been developed across multiple civil rights fee-shifting statutes.  *See A.R.*, 407 F.3d at 75 ("[W]e 'interpret the IDEA fee provisions in consonance with those of other fee-shifting statutes.'" (quoting *I.B. ex rel. Z.B.* v. *N.Y.C. Dep't of Educ.*, 336 F.3d 79, 80 (2d

---

[5]     This Court is indebted to its colleagues for recent analyses in this area undertaken by Judge Lewis J. Liman in *A.G.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 7577 (LJL), 2021 WL 4804031 (S.D.N.Y. Oct. 13, 2021), and *M.H.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 1923 (LJL), 2021 WL 4804031 (S.D.N.Y. Oct. 13, 2021); Judge Ronnie Abrams in *V.W.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 2376 (RA), 2022 WL 37052 (S.D.N.Y. Jan. 4, 2022), and *J.R.* v. *N.Y.C. Dep't of Educ.*, No. 19 Civ. 11783 (RA), 2021 WL 3406370 (S.D.N.Y. Aug. 4, 2021); Judge Lorna G. Schofield in *M.D.* v. *N.Y. Dep't of Educ.*, No. 20 Civ. 6060 (LGS), 2021 WL 3030053, at *3 (S.D.N.Y. July 16, 2021); Judge James L. Cott in *H.C.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 844 (JLC), 2021 WL 2471195 (S.D.N.Y. June 17, 2021); and Judge Stewart D. Aaron in *A.B.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 3129 (SDA), 2021 WL 951928 (S.D.N.Y. Mar. 13, 2021).

Cir. 2003) (per curiam))); *see also S.N. ex rel. J.N.* v. *Pittsford Cent. Sch. Dist.*, 448 F.3d 601, 604 (2d Cir. 2006); *see generally Lilly* v. *City of New York*, 934 F.3d 222, 227-32 (2d Cir. 2019) (discussing the history of fee-shifting jurisprudence).  At its core, allowing attorneys' fees in a civil rights action "ensure[s] effective access to the judicial process for persons with civil rights grievances." *Hensley* v. *Eckerhart*, 461 U.S. 424, 429 (1983).  "When a plaintiff succeeds in remedying a civil rights violation, ... he serves 'as a "private attorney general," vindicating a policy that Congress considered of the highest priority.'" *Fox* v. *Vice*, 563 U.S. 826, 833 (2011) (quoting *Newman* v. *Piggie Park Enterps., Inc.*, 390 U.S. 400, 402 (1968) (per curiam)).  "[T]he fee-shifting feature of the IDEA — including the authority to award reasonable fees for the fee application itself — plays an important role in 'attract[ing] competent counsel' to a field where many plaintiffs with meritorious cases could not afford to pay such counsel themselves." *G.T.* v. *N.Y.C. Dep't of Educ.*, No. 18 Civ. 11262 (GBD) (BCM), 2020 WL 1516403, at *10 (S.D.N.Y. Feb. 12, 2020) (quoting *Simmons* v. *N.Y.C. Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009)), *report and recommendation adopted*, No. 18 Civ. 11262 (GBD) (BCM), 2020 WL 1503508 (S.D.N.Y. Mar. 30, 2020).

### b.    Determining a "Presumptively Reasonable Fee"

Attorneys' fees are typically awarded by determining the "'presumptively reasonable fee,'" often (if imprecisely) referred to as the "lodestar." *Millea* v. *Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cnty. of Albany*, 522 F.3d 182, 183

(2d Cir. 2008)); *see also Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542, 552-53 (2010).  This fee is calculated by multiplying the "reasonable hourly rate and the reasonable number of hours required by the case."  *Millea*, 658 F.3d at 166. Courts may, only after the initial calculation of the presumptively reasonable fee, adjust the total when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee."  *Lilly*, 934 F.3d at 230 (quoting *Millea*, 658 F.3d at 167).  A district court possesses considerable discretion in awarding attorneys' fees.  *See Millea*, 658 F.3d at 166; *see also Arbor Hill*, 522 F.3d at 190.

The Second Circuit clarified the process by which a district court determines the reasonable hourly rate in *Lilly* v. *City of New York*, a case involving a fee-shifting statute:

> [T]he district court, in exercising its considerable discretion, [should] bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.  The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.  The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case.  The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Lilly*, 934 F.3d at 230 (quoting *Arbor Hill*, 522 F.3d at 190).[6]  In this setting, "the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties."  *Bliven* v. *Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *DiFilippo* v. *Morizio*, 759 F.2d 231, 236 (2d Cir. 1985)).

"To determine the reasonable hourly rate for each attorney, courts must look to the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Heng Chan* v. *Sung Yue Tung Corp.*, No. 03 Civ. 6048 (GEL), 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007) (quoting *Gierlinger* v. *Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)).  The Second Circuit's "forum rule" requires courts to "generally use 'the hourly rates employed in the district in which the reviewing court sits' in calculating the presumptively reasonable fee."  *Simmons*, 575 F.3d at 174 (quoting *Arbor Hill,* 493 F.3d at 119).

When determining the reasonable number of hours, a court must make "a conscientious and detailed inquiry into the validity of the representations

---

[6]     The twelve factors enumerated in *Johnson* are: (i) the time and labor required; (ii) the novelty and difficulty of the questions; (iii) the level of skill required to perform the legal service properly; (iv) the preclusion of employment by the attorney due to acceptance of the case; (v) the attorney's customary hourly rate; (vi) whether the fee is fixed or contingent; (vii) the time limitations imposed by the client or the circumstances; (viii) the amount involved in the case and results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cnty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008) (citing *Johnson* v. *Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard* v. *Bergeron*, 489 U.S. 87 (1989)).

that a certain number of hours were usefully and reasonably expended." *Haley* v. *Pataki*, 106 F.3d 478, 484 (2d Cir. 1997) (internal quotation marks and citation omitted). In addition, a court should examine the hours expended by counsel with a view to the value of the work product to the client's case. *See Lunday* v. *City of Albany*, 42 F.3d 131, 133-34 (2d Cir. 1994) (per curiam). The Court is to exclude "excessive, redundant[,] or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino* v. *Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

In determining whether hours are excessive, "the critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Samms* v. *Abrams*, 198 F. Supp. 3d 311, 322 (S.D.N.Y. 2016) (quoting *Grant* v. *Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). And where "the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." *Yea Kim* v. *167 Nail Plaza, Inc.*, No. 05 Civ. 8560 (GBD) (GWG), 2009 WL 77876, at *4 (S.D.N.Y. Jan. 12, 2009) (internal quotation marks and citation omitted). A court also retains the discretion to make across-the-board percentage reductions to exclude unreasonable hours, colloquially referred to as "trimming the fat." *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987).

**B.     Analysis**

**1.     Overview of the Parties' Arguments**

The award of attorneys' fees in a fee-shifting case has significance at both the micro and macro levels.  The reviewing court makes determinations regarding reasonable hourly rates and reasonable hours expended based on the specific facts of the case before it.  However, in making those determinations, the court is informed by analogous decisions from similar cases over which it has presided and from sister courts in the relevant district.  Conversely, the resulting award becomes part of a universe of comparable (or distinguishable) decisions to be considered in future cases.

The instant fee petition is significant for other reasons.  It exists not merely because of a failure of settlement efforts (which is not uncommon and is not itself a cause for concern by the Court), but because each side has adopted a Manichean view of the IDEA administrative process that all but forecloses the possibility of settlement in most cases.  According to Plaintiff's counsel, the blame can be laid squarely at Defendant's door; in or about 2018, DOE simply "began retreating from making reasonable (or, in some instances, any) offers, leaving more and more fee claims unsettled and in need of being first sued and now litigated." (Cuddy Decl. ¶ 31; *see also id.* at ¶¶ 84-97 (outlining unsuccessful efforts at settlement); Pl. Br. 1 n.1 (citing court admonition to DOE in *H.C.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 844 (JLC), 2021 WL 2471195, at 8 n.8 (S.D.N.Y. June 17, 2021)).  Defendant counters that the problem is one of Plaintiff's counsel's making:  "[A]s has been found time and again in this

12

District in similar proceedings brought by these and other lawyers in this field, not only are the rates and hours billed by CLF for work on the hearing markedly excessive, but the billing for this federal action is also excessive and should be pared back extensively."  (Def. Opp. 1).

The Court has carefully considered both sides' arguments in making its fee determinations, and the fact that this Opinion will satisfy neither side is a sure sign of its correctness.  However, the Court observes that there is little utility in the current stalemate between the parties.  The continued adherence by Plaintiff's counsel to aspirational hourly rates that no court has awarded will lead only to further opinions significantly discounting those rates.  And on that point, this Court has reviewed scores of fee petition decisions from sister courts in this District, including fee petitions in IDEA cases, and it remains unpersuaded by Plaintiff's counsel's claims of fundamental flaws in their analyses.  Conversely, DOE can continue playing hardball by refusing to settle attorneys' fee demands from counsel in IDEA cases; however, the fact that courts frequently award attorneys' fees incurred in the resulting fee litigation (*i.e.*, "fees on fees") means, as a practical matter, that the difference between the initial fee demand and the reviewing court's ultimate fee award grows ever smaller once litigation is filed.

This Court echoes the sentiments of the IHO in this case:

> Over the course of the past several years, however, these hearings have increasingly gotten lawyered-up, and increasingly have focused on technicalities and procedure and legal argument.  They have come to be so routinely centered around issues of reimbursement for private school expenditures that both sides now

often come to the table believing that the hearing is about money, not a child, about outwitting, rather than working with, the[ ] other side.

One result has been that these decisions have also become far more legalistic — which is fine, even essential, as the law has gotten more complicated and detailed.  The problem is not that the parties cannot hope to understand the technical legal jargon and reasoning that have become the driving force of these cases.  The problem, rather, is that the voice of the law makes it easy to forget the cry of the child.  For all of us participating in this enterprise, even the parents, even, perhaps especially, those who sit in judgment, legalisms undercut collaboration, money trumps education, each side increasingly feels distanced from, rather than drawn back towards, the capacity to work with the other.

I ask that we all pause and return our attention to where it most assuredly belongs.  This case, then, is *not* about the past.  It is *not* about money.  It *is* about a child to whom each side in this dispute owes a profound duty of care, and it is about seeking ways to move forward in a manner that assists both sides to exercise that duty, making progress, working together.

(Cuddy Decl., Ex. A at 61-62 (emphases in original)).

### 2.    The Court Awards Reasonable Attorneys' Fees

### a.    Determining Reasonable Hourly Rates

As presaged by the preceding section, the parties sharply disagree as to the reasonable hourly rates to be applied in this case.  In Plaintiff's counsel's briefing, they seek fees for the following legal professionals:

- Nina Aasen, referred to as "lead counsel" in this case, has been licensed to practice law since 1994.  CLF seeks an hourly rate of $550 for Ms. Aasen.  (Pl. Br. 12).

- Raul Velez, also referred to as "lead counsel," was admitted to the New York Bar in 2019.  CLF seeks an hourly rate of $375 for Mr. Velez.  (*Id.* at 12).

- Andrew Cuddy, CLF's managing attorney, has litigated hundreds of special education cases over the preceding 20 years. Plaintiff explains that Mr. Cuddy "contributed significantly to the oversight of billing, negotiations, development of litigation strategy, and the federal component of the case." (*Id.* at 15). CLF seeks an hourly rate of $550 for Mr. Cuddy. (*Id.*).

- Erin Murray, a CLF associate who was admitted to the New York Bar only in 2020, is described as having responsibility for "all aspects of the special education litigation process, including complaints, and negotiations and federal court litigation to implement FOFDs and recover related fees and costs." (*Id.* at 15-16). CLF seeks an hourly rate of $375 for Ms. Murray. (*Id.* at 16).

- CLF also seeks hourly rates of $225 for paralegals Amanda Pinchak, Shobna Cuddy, Burhan Meghezzi, and Cailin O'Donnell. (*Id.* at 15).

Mr. Cuddy's supporting declaration includes additional information regarding the legal experience of these professionals. (*See* Cuddy Decl., Ex. A at 41, 46-49, 52-53, 56; Ex. H). It also includes the billing rates for all of the professionals in CLF's Auburn office (*id.*, Ex. A at 10); the dates of hire and certain background information for professionals in all five of CLF's offices (*id.*, Ex. A at 17-21); and additional background information concerning Ms. Aasen (*id.*, Ex. A at 21-23).

Mr. Cuddy's description of the IHO hearing in his declaration references work performed by Attorneys Aasen and Velez, with assistance from Paralegals Pinchak, O'Donnell, and Meghezzi. (Cuddy Decl., Ex. A at 23-27). However, Mr. Cuddy's charts of legal professionals who performed work on the administrative and federal components of this case — as well as the corresponding CLF billing records — identify numerous individuals *not*

15

mentioned in the briefing; these individuals (and the hourly rates they seek) include attorneys Benjamin Kopp ($400), Justin Coretti ($425), and Jason Sterne ($550); and paralegals Allison Bunnell, Allyson Green, and Sarah Woodard (all $225).  (*Id.*, Ex. A at 28-29).[7]

Unsurprisingly, Defendant DOE mounts a vigorous challenge to the rates sought.  Among other things, Defendant argues that: (i) "the hourly rates sought here exceed the rates awarded other attorneys in IDEA fee cases, including fees cases brought by attorneys and firms specializing in this specific practice area" (Def. Opp. 6; *see also id.* at 9); (ii) the work undertaken in this case does not justify the rates sought (*id.* at 7-8); and (iii) CLF's submission of information regarding fee demands in other cases, rates sought by other IDEA attorneys, and responses to Freedom of Information Law ("FOIL") requests is "largely irrelevant" to the Court's inquiry (*id.* at 6 n.3; *see also id.* at 12-13).  Defendant argues for hourly rates no greater than $360 for CLF's senior attorneys; $150-200 for CLF's junior attorneys; and $100 for CLF's paralegals.  (*Id.* at 10-12).

Both sides offer impassioned arguments under the *Johnson* factors.  (*See, e.g.*, Pl. Br. 11-21; Def. Opp. 6-16).  The Court has carefully considered all of these arguments and the *Johnson* factors, and offers several observations.  To begin, the Court recognizes that Plaintiff's counsel achieved success for

---

[7]    With Plaintiff's reply memorandum, Mr. Cuddy filed a reply declaration that included updated figures for the federal litigation, and added a new legal professional, ChinaAnn Reeve, about whom no information was provided.  (*See* Cuddy Reply Decl., Ex. J).  Ms. Reeve's time will not be reimbursed.

Plaintiff in obtaining the placement of S.P. in a private school for the 2018-2019 school year at Defendant's expense and compensatory related services. (Cuddy Decl., Ex. A at 97-98).  No less an authority than the Supreme Court has opined that "[t]he most critical factor in determining a fee award's reasonableness is the degree of success obtained."  *Farrar* v. *Hobby*, 506 U.S. 103, 103 (1992).[8]

The Court also takes seriously the arguments of Plaintiff's counsel concerning the size of the IDEA bar and the attendant stresses on that bar occasioned by fee-shifting litigation.  (*See, e.g.*, Pl. Br. 14 ("These difficulties of the smaller special education bar and its attempt to attract newer competent counsel to assist in taking on the number of underserved families, are exacerbated by disparities between rates of counsel with decades of experience — which the bar consistently testifies to already being too low — and counsel who, regardless of their skill level or hours-worked-per-day, have worked for fewer chronological years.")).  In consequence, the Court has paid attention to the vintage of other IDEA fee decisions in this District, to ensure that the rates awarded are not out-of-date.  That said, having reviewed the materials concerning rates nominally sought by CLF and other law firms in this area (*see generally* Kopp Decl.), this Court agrees with other courts that have ascribed little to no significance to such information.  *See, e.g.*, *M.H.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 1923 (LJL), 2021 WL 4804031, at *11 (S.D.N.Y.

---

[8]     That portion of relief sought by Plaintiff in the due process complaint but abandoned at the IHO hearing will be addressed by the Court in determining the number of hours reasonably expended.

Oct. 13, 2021) ("The declaration by another attorney in the IDEA area also is of some, albeit limited, value.  Accepting the claims in the declaration as true because they are undisputed, at most they show the rates that one attorney believes are reasonable.  They do not indicate which, if any, clients 'actually paid the rates they claim to charge' or provide details of any of the cases." (collecting cases)); *S.J.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 1922 (LGS), 2021 WL 100501, at *3 (S.D.N.Y. Jan. 12, 2021) ("The Court declines to rely on the asserted rates as a starting point in the analysis of a reasonable hourly rate, because the submitted evidence either does not substantiate such rates were actually paid (versus claimed), or where rates are asserted to have been actually paid, does not provide relevant context for such rates billed."), *modified on other grounds*, No. 20 Civ. 1922 (LGS), 2021 WL 536080 (S.D.N.Y. Jan. 25, 2021); *C.D.* v. *Minisink Valley Cent. Sch. Dist.*, No. 17 Civ. 7632 (PAE), 2018 WL 3769972, at *6 (S.D.N.Y. Aug. 9, 2018) ("C.D. has not offered context as to that litigation that enables the Court meaningfully to assess whether the work there was fairly analogous to that here, or whether the rates those attorneys 'bill at' reflect fees actually paid by clients.").[9]

Defendant's arguments are similarly not immune from criticism.  For starters, DOE's fixation on prior decisions runs the risk of undermining fee-shifting statutes, a concern noted by the Second Circuit:

---

[9]     The Court also obtained little guidance from the FOIL materials submitted by Plaintiff's counsel.  *Cf. M.H.*, 2021 WL 4804031, at *11 ("The FOIL requests, which reflect the rates paid to a number of differing attorneys of varying experience lack sufficient context to provide an adequate basis for the Court to make a finding about the proper hourly rate for the attorneys who litigated M.H.'s case.").

> Thus, "a reasonable hourly rate" is not ordinarily ascertained simply by reference to rates awarded in prior cases. ... Recycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation available under § 1988(b) and compensation available in the marketplace. This undermines § 1988(b)'s central purpose of attracting competent counsel to public interest litigation. ... Instead, the equation in the caselaw of a "reasonable hourly fee" with the "prevailing market rate" contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.

*Farbotko* v. *Clinton Cty. of New York*, 433 F.3d 204, 208 (2d Cir. 2005) (internal citations omitted).

Separately, the Court finds that Defendant's repeated claims of a "lightly contested hearing" (*see, e.g.*, Def. Opp. 1, 8, 10) are not dispositive.  In this regard, the Court credits the representations of Plaintiff's counsel that it was unaware of the degree or the details of Defendant's opposition until the IHO hearing itself, and thus had to prepare for what it understood to be a contested proceeding.  (Pl. Br. 2-4, 7-8, 13-14; *see generally id.* at 19 ("Judge Aaron's analysis amounts to retrospective reduction of fees based on considerations (e.g. Defendant's decision to present a case at hearing) that are unknown to the plaintiffs at the time the attorney-client relationship is established, and remain unknown until at least after a case is initiated and during the preparation for hearing, [and that] do not change the amount skill necessary to achieve a desirable outcome.")).[10]  Even at the hearing, Defendant did not stipulate to

---

[10]    The Court also accepts Plaintiff's argument that S.P.'s Fragile X syndrome "ma[de] determining the appropriateness of a special education program for her particularly challenging given how unique her needs are in relation to this condition."  (Pl. Reply 7).

any issues, but rather introduced several exhibits into evidence.  (Def. Opp. 8).

Having not advised Plaintiff's counsel of the precise nature of its opposition,

and having refused to stipulate to any issues prior to the hearing — even after

the matter was adjourned for six weeks because of a last-minute recusal of the

IHO — Defendant is on the hook for the reasonable costs of preparing for that

hearing.  *See, e.g.*, *H.C.*, 2021 WL 2471195, at *6 (awarding top rate of $360 to

CLF senior attorneys, in part because "[h]owever (and notwithstanding the

DOE's non-committal stance on whether and to what extent it would defend

the case), the proceedings were ultimately minimally contested, with the DOE

objecting only to one exhibit and declining to offer testimony"); *cf. C.B.* v. *N.Y.C.*

*Dep't of Educ.*, No. 18 Civ. 7337 (CM), 2019 WL 3162177, at *8 (S.D.N.Y. July

2, 2019) ("While the DOE may not have put on the most vigorous defense, and

while the case may have been 'relatively straightforward,' 'straightforward' is

not a synonym for 'uncontested.'" (internal citation omitted)).  That said, the

Court recognizes that work performed by Plaintiff's counsel was less (and less

complex) than that performed in other cases in this District.  *Compare M.H.*,

2021 WL 4804031, at *2 ("The due process hearing was ultimately held over

four separate days from August 7, 2017 to April 18, 2018.  Over the course of

the hearings, Plaintiff introduced 59 exhibits into evidence and Defendant

introduced an additional three exhibits.  Defendant presented two witnesses

while Plaintiff presented the testimony of five witnesses, including that of

M.H."), *with H.C.*, 2021 WL 2471195, at *1 ("The hearing lasted from 10:38

a.m. until 10:46 a.m.").

The Court has considered the proffered experiences of each of the legal professionals, with a particular focus on the years practicing law in IDEA cases. As noted earlier, it has also carefully considered the evaluations of CLF fee petitions undertaken by sister courts, particularly in 2021. *See supra* n.6. The Court agrees with the analyses of hourly rates that are presented in those decisions, and it incorporates them herein by reference. *See V.W.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 2376 (RA), 2022 WL 37052, at *3-6 (S.D.N.Y. Jan. 4, 2022); *A.G.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 7577 (LJL), 2021 WL 4804031, at *5, 8 (S.D.N.Y. Oct. 13, 2021); *M.H.*, 2021 WL 4804031, at *9-15; *J.R.*, 2021 WL 3406370, at *3-4; *M.D.*, 2021 WL 3030053, at *2-4; *H.C.*, 2021 WL 2471195, at *4-7; *S.J.*, 2021 WL 100501, at *3-4. Coupling those analyses with its own review of the *Johnson* factors, the Court has determined reasonable hourly rates of $400 for Mr. Cuddy, Mr. Sterne, and Ms. Aasen; $280 for Mr. Coretti; $250 for Mr. Kopp; $180 for Ms. Murray and Mr. Velez; $125 for Ms. Cuddy and Ms. Woodard; and $100 for Ms. Bunnell, Ms. Pinchak, Mr. Meghezzi, Ms. O'Donnell, and Mr. Velez for the brief period of time he worked on this case as a paralegal.

These rates reflect the time period during which the services were performed, but also account for the delay counsel has experienced in being paid. They are likewise consistent with "the time and labor required," "the novelty and difficulty of the questions involved," and "the level of skill required to perform the legal service properly." *Lilly*, 934 F.3d at 228 (quoting *Arbor Hill*, 522 F.3d at 186 n.3). Finally, these rates "reflect that counsel secured the

21

relief Plaintiff requested in the underlying administrative proceeding, which is 'the most critical factor' when determining a fee award." *S.J.*, 2021 WL 100501, at *4 (internal citations omitted).

### b. Determining Hours Reasonably Expended

The Court now proceeds to determine the reasonable number of hours expended by these legal professionals. To review, in determining a reasonable number of hours, a court "must exclude '[h]ours that are excessive, redundant, or otherwise unnecessary,' allowing only those hours that are 'reasonably expended.'" *Hernandez* v. *Berlin Newington Assocs., LLC*, 699 F. App'x 96, 97 (2d Cir. 2017) (summary order) (quoting *Kirsch* v. *Fleet St., Ltd.*, 148 F.3d 149, 172-73 (2d Cir. 1998)); *see also Wise* v. *Kelly*, 620 F. Supp. 2d 435, 442 (S.D.N.Y. 2008) ("If the court finds that the fee applicant's claim is excessive or insufficiently documented, or that time spent was wasteful or redundant, the court may decrease the award, either by eliminating compensation for unreasonable hours or by making across-the-board percentage cuts in the total hours for which reimbursement is sought." (internal citations omitted)).

In prior fee petitions, this Court has alternated between the use of an across-the-board percentage reduction and the disallowance of certain hours billed. *Compare Gamero* v. *Koodo Sushi Corp.*, 328 F. Supp. 3d 165, 175 (S.D.N.Y. 2018) (disallowing certain time entries billed), *with Marzullo* v. *Karmic Release Ltd.*, No. 17 Civ. 7482 (KPF), 2018 WL 10741649, at *3 (S.D.N.Y. Apr. 24, 2018) (imposing across-the-board reduction of 15%). Both are acceptable methods of arriving at a reasonable number of hours. In this case,

the Court has determined to consider separately the administrative and litigation components of this case, and impose specific reductions in the hours sought.

### i.     The Administrative Proceedings

#### (a)     The Hours Sought and the Parties' Arguments

Plaintiff seeks reimbursement for the following hours billed by the following legal professionals to the administrative component of this case:

- Andrew Cuddy (attorney): 2.7

- Benjamin Kopp (attorney): 1.2

- Justin Coretti (attorney): 1.7

- Jason Sterne (attorney): 1.4

- Nina Aasen (lead attorney): 30.8

- Raul Velez (lead attorney): 28.5

- Raul Velez (lead attorney - travel): 10.0
  (billed at half the hourly rate for work)

- Allison Bunnell (paralegal): 2.7

- Amanda Pinchak (paralegal): 8.9

- Burhan Meghezzi (paralegal): 1.8

- Cailin O'Donnell (paralegal): 3.4

- Raul Velez (as paralegal): 0.1

- Shobna Cuddy (paralegal): 2.9

- Sarah Woodard (paralegal): 1.2

(Cuddy Decl., Ex. A).  In sum, Plaintiff claims 76.3 hours of attorney time and 21.0 hours of paralegal time, for a total of 97.3 hours for the administrative

component.  Substantiation for this request includes CLF billing records and summaries for the relevant time period.  (*Id.*).  Mr. Cuddy also advises that, with respect to the administrative component of the case, CLF has imposed discretionary reductions totaling 14.5 hours and $4,880.00.

Defendant argues that Plaintiff's hours should be substantially reduced because they are excessive in light of the hearing that was ultimately held. (*See* Def. Opp. 17 ("Although Plaintiff urges that counsel needed to prepare to present their case and implement the resulting victory — and surely some work was necessary — there is no indication in Plaintiff's papers that Defendant had suggested a level of opposition at any stage of the administrative proceeding making such a volume of work necessary.  A more fulsome analysis only shows that the work claimed here was not necessary to achieve the results so readily obtained.").  More specifically, Defendant objects to Mr. Velez billing 10 hours of travel time, even at a reduced rate.  (*Id.* at 17).

Plaintiff contends that the IDEA statute itself forecloses any reductions to Plaintiff's counsel's billings.  (Pl. Br. 5-9; Pl. Reply 8-9).  The IDEA provides that, with a single exception, "the court shall reduce ... the amount of the attorneys' fees awarded under this section" under any one of the following circumstances:

> (i) the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy;
>
> (ii) the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar

services by attorneys of reasonably comparable skill, reputation, and experience;

(iii) the time spent and legal services furnished were excessing considering the nature of the action or proceeding; or

(iv) the attorney representing the parent did not provide to the local educational agency the appropriate information in the notice of the complaint described in subsection (b)(7)(A).

20 U.S.C. § 1415(i)(3)(F)(ii)-(iii).  That exception — on which Plaintiff's argument is predicated — is that the mandatory reductions in subparagraph F "shall not apply in any action or proceeding if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section."  *Id.* § 1415(i)(3)(G). Plaintiff argues that because Defendant unreasonably protracted the final resolution of the action, Section 1415(i)(3)(F) is not triggered and the Court thus should not reduce the requested fees.  The Court disagrees.

To be sure, Defendant's conduct increased the work that had to be done by Plaintiff's counsel in connection with the proceedings.  Among other things, Defendant failed at the administrative phase to participate in a mandatory resolution session and failed to secure Comptroller approval for the proposed settlement between the parties, thus necessitating the IHO hearing.  (Cuddy Decl. ¶¶ 162-163, 167, 171).  At the litigation phase, DOE counsel offered no settlement proposals, thus prompting Plaintiff to file the instant motion. (Murray Decl. ¶¶ 12-16).  But on the facts of this case, the Court is not willing to say that Defendant "unreasonably protracted" either the administrative or

the litigation components of this case.  *See S.J.*, 2021 WL 100501, at *5

("[C]onsidering both parties' arguments and their competing version of events

that transpired during the administrative proceeding and subsequent federal

litigation over fees, the Court does not find that the DOE 'unreasonably

protracted' the final resolution of the action."); *see also H.C.*, 2021 WL

2471195, at *8 ("As an initial matter, the Court finds that any protraction on

the DOE's part did not rise to the level of being 'unreasonable.'" (collecting

cases)).  In any event, even a finding of unreasonable protraction would not

permit this Court to jettison the "presumptively reasonable fee" analysis

outlined above.  *See M.H.*, 2021 WL 4804031, at *24-25.

The Court's rejection of Plaintiff's argument is not, however, an adoption

of Defendant's objections.  Defendant's principal objection echoes the one made

in the rate-setting context, and the Court resolves the objection similarly.

Defendant suggests that Plaintiff's counsel should have foreseen that, even

after DOE counsel failed to obtain approval for a settlement offer reached at an

earlier stage in the proceedings, DOE would offer only a half-hearted objection

to Plaintiff's claims.  There is nothing in the record before this Court that would

support such foresight.  CLF's records indicate that Plaintiff's counsel was not

advised until the day before the hearing — which itself had been adjourned six

weeks earlier — that Defendant would not be presenting any witnesses.

(Cuddy Decl., Ex. A at 23).  Even then, "[t]he Defendant did not indicate to

Plaintiff prior to the initiation of the hearing whether the Defendant would be

presenting a case or conceding to any of the relief Plaintiff requested, requiring

the Plaintiff to prepare for a contested hearing." (*Id.* at ¶ 171).  And at the

actual hearing,

> The Defendant submitted fourteen documentary
> exhibits into evidence and did not call any witnesses.
> The Defendant conceded to the denial of FAPE on the
> record but did not concede to the appropriateness of the
> unilateral placement nor relief requested by the
> Plaintiff.  The Defendant conducted a cross examination
> of all Plaintiff's witnesses.

(*Id.* at ¶ 174).  At base, Plaintiff's counsel had an obligation to zealously

advocate for their client.  In the absence of stipulation to the issues, or earlier

and more detailed notice of non-opposition from the defense, Plaintiff's counsel

had a professional responsibility to prepare for the hearing.

### (b) The Court's Determination of a Reasonable Number of Hours Billed for the Administrative Proceedings

The Court has reviewed CLF's billings for the administrative component

of the case, including the intake of the matter; evaluations of an appropriate

placement in light of S.P.'s Fragile X condition; preparation of a due process

complaint; communications with DOE concerning the case, a proposed

settlement, and the hearing; preparation for and attendance at the hearing;

review of the IHO's FOFD; and issues of implementation.  It accepts CLF's

representations that clerical and similarly routine matters were handled in the

main by paralegals, and that CLF has already implemented discretionary

reductions to the fees it seeks.  The billing statements are clear as to the tasks

performed and the time allotted thereto by each legal professional.  Moreover,

the Court does not observe billing conventions that usually prompt across-the-

board reductions, such as block-billing, imprecise entries, duplicative entries, billing by senior attorneys for work more appropriately performed by junior attorneys, or billing by attorneys for clerical and administrative tasks. As a result, instead of a percentage reduction, the Court will implement the following specific reductions:

- Mr. Velez's travel time is reduced from 10 hours to 2 hours, in line with numerous cases from this District. *See, e.g., C.D.*, 2018 WL 3769972, at *10 ("The Court's judgment is that the properly reimbursable travel time here is one hour in each direction."); *cf. K.F.* v. *N.Y.C. Dep't of Educ.*, No. 10 Civ. 5465 (PKC), 2011 WL 3586142, at *6 (S.D.N.Y. Aug. 10, 2011) (disallowing travel time entirely: "In a hypothetical negotiation with a client who, unlike K.F., would be on the hook for attorney's fees in the event the case were lost, it is doubtful that a reasonable client would retain an Auburn or Ithaca attorney over a New York City attorney if it meant paying New York City rates and an additional five hours in billable time for each trip."), *adhered to as amended*, No. 10 Civ. 5465 (PKC), 2011 WL 4684361 (S.D.N.Y. Oct. 5, 2011).

- Mr. Velez's attorney time is reduced by 9 hours, to account for time spent getting up to speed after he replaced Ms. Aasen; to account for issues abandoned at the IHO hearing; to address several entries of comparatively large amounts of time billed merely to "review of disclosure" in anticipation of the hearing; and, most importantly, because of the Court's concerns regarding Mr. Velez's practice of "billing a plethora of 0.1 hour services for minor tasks of minimal duration." *M.H.*, 2021 WL 4804031, at *20.

- Mr. Kopp's time is reduced to 0.6 hours, because the research he performed could have been done by a more junior attorney.

- Ms. O'Donnell's time is reduced by 1 hour, because the records do not substantiate why the tasks she performed were performed by Mr. Meghezzi in much less time.

The Court makes no further reductions to the hours sought by Plaintiff's counsel in connection with the administrative proceedings.

### ii.    The Litigation Proceedings

### (a)    The Right to Recover "Fees on Fees"

The IDEA gives a prevailing parent the right to recover their reasonable attorneys' fees and costs incurred in a federal court action related to vindicating their rights, including their right to recover attorneys' fees. *See C.D.*, 2018 WL 3769972, at *11; *G.T.*, 2020 WL 1516403, at *9 ("a plaintiff may seek 'fees-on-fees' under the IDEA").  "Although '[a] request for attorney's fees should not result in a second major litigation[,]' neither should the threat that counsel will not receive its reasonable fees be a bludgeon that can be used by the losing school district to coerce the parent at the administrative stage to an inadequate settlement or to a compromise of the parent's rights."  *M.H.*, 2021 WL 4804031, at *21 (internal citations omitted).  Counsel may also be entitled to reasonable fees and costs incurred in enforcing the decision of an IHO and a FOFD.  *See H.C.*, 2021 WL 2471195, at *10 (holding that where a complaint is not confined to the issue of attorneys' fees, but also sought equitable relief under 42 U.S.C. § 1983, counsel is entitled to be reasonably compensated for that work).

### (b)    The Hours Sought and the Parties' Arguments

Plaintiff seeks reimbursement for the following hours billed by the following legal professionals for their work on the instant litigation:

- Andrew Cuddy (attorney): 6.80

- ▪ Justin Coretti (attorney): 2.00

- ▪ Erin Murray (attorney): 64.00

- ▪ Shobna Cuddy (paralegal): 2.80

- ▪ Cailin O'Donnell (paralegal):2.60

- ▪ ChinaAnn Reeve (paralegal): 1.00

(Cuddy Reply Decl., Ex. J).  In sum, Plaintiff claims 72.8 hours of attorney time and 6.40 hours of paralegal time, for a total of 79.20 hours for the litigation component.[11]  Citing Defendant's conduct in both the administrative and litigation components of this case, Plaintiff argues that "Defendant should not be awarded a windfall in fee reductions for its tactics, and Plaintiff should not be penalized for its efforts to ensure S.P. was provided all relief awarded as a result of the impartial hearings."  (Pl. Br. 23).

Here, too, Defendant objects.  This time, Defendant argues that "[m]uch of the work in prosecuting this federal action has been done with boilerplate.  This case does not reinvent the wheel.  There was no discovery.  Motion practice has not been complex.  This is a workaday case."  (Def. Opp. 19).  In addition, Defendant challenges the incurrence of substantial legal fees in the service of obtaining reimbursement for a $500 outlay by Plaintiff.  (*Id.* at 21).

---

[11]    Mr. Cuddy advises that with respect to the litigation component of the fee petition, CLF has already undertaken discretionary reductions of 5.80 hours and $2,110.00.

### (c) The Court's Determination of a Reasonable Number of Hours Billed for the Litigation Proceedings

Plaintiff's counsel seeks to recover $30,433.51 in attorneys' fees and costs for work in this Court to recover $39,243.19 in attorneys' fees and costs. That is not reasonable. The latitude extended to Plaintiff's counsel in claiming fees for the administrative component of the case cannot be extended to the litigation component. The instant lawsuit was a straightforward claim for attorneys' fees under the IDEA, coupled with a minimal implementation claim. The complaint was 9 pages long. (Dkt. #1). There was no discovery. (Dkt. #9). There were no extensive settlement discussions. (Murray Decl. ¶¶ 13-16). The law in the area is clear, and the briefing raised neither complex issues nor novel claims. Indeed, much of the briefing was recycled from prior CLF submissions. (*See, e.g.*, *A.G.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 7577 (LJL), Dkt. #13; *M.D.* v. *N.Y. Dep't of Educ.*, No. 20 Civ. 6060 (LGS), Dkt. #15; *S.J.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 1922 (LGS), Dkt. #36; *H.C.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 844 (JLC), Dkt. #31; *J.R.* v. *N.Y.C. Dep't of Educ.*, No. 19 Civ. 11783 (RA), Dkt. #22). What is more, a substantial portion of Plaintiff's submissions included extraneous arguments and information that did not impact the Court's decision. A reduction in hours is warranted.

Sister courts in this District have imposed significant reductions in fees on fees sought in IDEA cases. *See, e.g.*, *M.D.*, 2021 WL 3030053, at *6 ("In light of this case's low degree of complexity — Plaintiff filed the complaint, followed by service and summary judgment briefing on the straightforward

31

issues of fees — a reduction of attorney hours by fifty percent achieves rough justice."); *see generally G.T.*, 2020 WL 1516403, at \*10 (observing that "most courts in this district limit awards for time spent litigating an IDEA fee application to a fraction — often a small fraction — of the time spent on the underlying administrative proceeding"; noting that some courts award fees on fees of "between 8% and 24% of the award for time spent on the case itself," while others permit awards "up to and even slightly over half of the fees awarded for time spent on the underlying administrative proceeding" (collecting cases)).  This Court will not go as far as those decisions, because it remains the case that (i) Plaintiff was compelled to litigate the attorneys' fees issue in this Court and (ii) even after the litigation was filed, Defendant did not engage in settlement discussions, thereby precipitating the instant motion practice.

Once again, instead of a percentage reduction, the Court will implement the following specific reductions:

- Ms. Murray's time is reduced by 24 hours, to account for excessive time allocated to preparing the complaint and the briefing; excessive time spent on the Cuddy Declaration, which was overrun with marginally relevant and irrelevant information; and circumvention of this Court's page limits.

- Mr. Cuddy's time is reduced by 2 hours, to account for hours allocated to including irrelevant information in his declaration and circumvention of the Court's page limits.

- Ms. Reeve's time is disallowed, because of the absence of information provided concerning her educational and employment experience.

The Court makes no further reductions to the hours sought by Plaintiff's counsel in connection with the instant litigation.  *See generally B.B.* v. *N.Y.C. Dep't of Educ.*, No. 17 Civ. 4255 (VEC) (SDA), 2018 WL 1229732, at *3 (S.D.N.Y. Mar. 8, 2018) (opining that counsel should not have needed more than 40 hours to litigate a standard IDEA fee petition).

### c.    The Attorneys' Fees Awarded

In light of the above determinations, the Court awards fees to Plaintiff's counsel for the administrative component of the case as follows:

| Timekeeper | Reasonable Rate | Reasonable Hours Billed | Amount |
|---|---|---|---|
| A.Cuddy | $400.00 | 2.7 | $1,080.00 |
| Kopp | $250.00 | 0.6 | $150.00 |
| Coretti | $280.00 | 1.7 | $476.00 |
| Sterne | $400.00 | 1.4 | $560.00 |
| Aasen | $400.00 | 30.8 | $12,320.00 |
| Velez (attorney) | $180.00 | 19.5 | $3,510.00 |
| Velez (travel) | $90.00 | 2.0 | $180.00 |
| Bunnell | $100.00 | 2.7 | $270.00 |
| Pinchak | $100.00 | 8.9 | $890.00 |
| Meghezzi | $100.00 | 1.8 | $180.00 |
| O'Donnell | $100.00 | 2.4 | $240.00 |
| Velez (paralegal) | $100.00 | 0.1 | $10.00 |
| S.Cuddy | $125.00 | 2.9 | $362.50 |
| Woodard | $125.00 | 1.2 | $150.00 |
| | | **Total:** | **$20,378.50** |

Additionally, the Court awards fees to Plaintiff's counsel for the litigation component of the case as follows:

| Timekeeper | Reasonable Rate | Reasonable Hours Billed | Amount |
|---|---|---|---|
| A.Cuddy | $400.00 | 4.8 | $1,920.00 |
| Murray | $180.00 | 40.0 | $7,200.00 |
| Coretti | $280.00 | 2.0 | $560.00 |
| S.Cuddy | $125.00 | 2.8 | $350.00 |
| O'Donnell | $100.00 | 2.6 | $260.00 |
| | | **Total:** | **$10,290.00** |

### 3.     The Court Awards Reasonable Costs and Expenses

Plaintiff's counsel seeks $1,961.70 in reimbursement for costs incurred in this case, including $970.50 for copying and printing (at 50¢/page), $402.00 in filing fees, $220.44 for lodging, $292.90 for mileage, $61.46 for meals, $10.00 for faxing (at $2.00/page), $3.40 for postage, and $1.00 for tolls. (Cuddy Decl. ¶ 185 & Ex. A; Cuddy Reply Decl., Ex. J).  In a footnote, Defendant acknowledges that the filing fees are recoverable, and says nothing about postage, but seeks reduced rates for the photocopying, printing, and faxing, and disallowance of lodging and travel costs.  (Def. Opp. 16 n.5).

A district court may award reasonable costs to the prevailing party in IDEA cases.  *See* 20 U.S.C. § 1415(i)(3)(B); *see also Arlington Cent. Sch. Dist. Bd. of Educ.* v. *Murphy*, 548 U.S. 291, 297-98 (2006) (holding "costs," as used in 20 U.S.C. § 1415(i)(3)(B), to refer to the list set out in 28 U.S.C. § 1920, the statute governing taxation of costs in federal court); *H.C.*, 2021 WL 2471195, at

34

*11 ("A district court may award reasonable costs to the prevailing party in IDEA cases.") (quoting *C.D.*, 2018 WL 3769972, at *12).

The Court approves without further discussion Plaintiff's request for reimbursement of filing fees and postage, totaling $405.40.  As for printing and copying, courts in this District generally limit such costs to 10 to 15 cents per page, though the practice is not uniform.  *See, e.g.*, *R.G.* v. *N.Y.C. Dep't of Educ.*, No. 18 Civ. 6851 (VEC), 2019 WL 4735050, at *6 (S.D.N.Y. Sept. 26, 2019).  Plaintiff proffers support for the rate of 50 cents per page in Exhibit D to the Cuddy Declaration, in the form of fee schedules from the New York Public Library, this Court, and the United States Court of Appeals for the Second Circuit.  (Cuddy Decl., Ex. D)  Adopting the reasoning of Judge Liman in *M.H.*, this Court will award printing and copying costs at a rate of 20 cents per page, resulting in a printing and photocopying award of $388.20.  *M.H.*, 2021 WL 4804031, at *27.  The Court disallows, however, Plaintiff's request for faxing costs; while accepting Plaintiff's explanation that it was Defendant who required that documents be faxed (Cuddy Decl. ¶ 59), the proffered $2.00-per-page fee charged by a retail fax service is not a proper comparable in light of CLF's in-house office equipment.  *See S.J.*, 2020 WL 6151112, at *7 ("In addition, the Court declines to award fax charges at $2 per page as such charges are not reasonable.").

That leaves travel expenses.  "A prevailing party in IDEA litigation is entitled to recover for costs incurred during reasonable travel."  *C.D.*, 2018 WL 3769972, at *13.  In *C.D.*, Judge Engelmayer determined:

35

> For the reasons discussed above in connection with the
> billing of travel time, it is not reasonable to shift most of
> the Cuddy Law Firm's travel costs to [defendant].
> Having determined that only a one-hour — rather than
> three and a quarter-hour — trip to the site of the IDEA
> administrative proceedings is properly compensable,
> the Court will make a proportionate reduction in
> mileage costs, which appear largely to have been
> incurred traveling to and from the Cuddy Law Firm's
> offices (or the lawyers' homes) and the hearings .... The
> Court will thus reduce the requested mileage costs by
> 70%, from $1,721.54 for the administrative phase of the
> litigation to $516.46.

*Id.* For similar reasons, he reduced the costs awarded for meals by 70%. *Id.*

Finally, Judge Engelmayer court awarded no costs for lodging, because "[a]n

attorney who was sited within a reasonable distance of the hearing location

could commute daily to the hearings, obviating any need for lodging." *Id.*

Using similar logic, this Court will reduce the requested mileage costs by 70%

(resulting in a mileage award of $87.87); will allow the requested toll of $1.00;

will reduce the meals by 50% (resulting in a meal award of $30.73); and will

disallow the requested lodging costs.  As a result, the Court awards total costs

of **$913.20**.

### 4.   The Court Does Not Award Pre-Judgment Interest

Mr. Cuddy requests "prejudgment interest at the federal reserve's prime

rate" in his declaration.  (Cuddy Decl. ¶ 28).  However, pre-judgment interest is

*not* requested in either of Plaintiff's opening or reply briefs.  (*See* Pl. Br. 25

("Based upon the foregoing, this Court should grant Plaintiffs' motion for

summary judgment and thereby award attorneys' fees, associated costs and

*postjudgment* interest in this matter." (emphasis added)); Pl. Reply 9 ("Based on

the foregoing, the Court should grant attorneys' fees and costs in favor of Plaintiff and such further relief as the Court deems just and proper.")). Presumably for this reason, Defendant's opposition submission does not address the point.  (*See* Def. Opp.).  It would seem, therefore, that the issue has been abandoned.

Even were the issue properly presented to it, the Court would deny the request.  Caselaw on the issue of pre-judgment interest in IDEA attorneys' fees cases has not been perfectly consistent, though it would appear that this Court has discretion to render such an award.  *Compare J.R.*, 2021 WL 3406370, at *6 (granting application for pre-judgment interest without discussion), *with S.J.*, 2021 WL 100501, at *5 (denying pre-judgment interest), *and A.* v. *Hartford Bd. of Educ.*, No. 11 Civ. 1381 (GWC), 2017 WL 1967498, at *4 (D. Conn. May 11, 2017) (denying pre-judgment interest where "[t]he court has already compensated Plaintiffs for the delay in payment of the court-awarded fees by applying Attorney Shaw's current hourly rate"); *cf. Doe* v. *E. Lyme Bd. of Educ.*, 962 F.3d 649, 661-62 (2d Cir. 2020) (affirming pre-judgment interest component of award to parent in IDEA case; recognizing that courts have discretion to award pre-judgment interest "to ensure that a plaintiff is fully compensated or to meet the remedial purpose of the statute involved" (internal quotation marks and citation omitted)).  A comprehensive review of the law was recently undertaken by Judge Liman in *M.H.*, 2021 WL 4804031, at *29-31. The Court agrees with his conclusion that "in IDEA cases, as in other fee-shifting contexts, the Court should take into account 'delay' by using current

rates in calculating a 'reasonable' attorneys' fee." *M.H.*, 2021 WL 4804031, at *31. It has done so in this case.

### 5.    The Court Awards Post-Judgment Interest

Plaintiff's request for post-judgment interest is granted. "Pursuant to 28 U.S.C. § 1961, '[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.'" *Tru-Art Sign Co.* v. *Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (internal citation omitted); *accord H.C.*, 2021 WL 2471195, at *12; *S.J.*, 2021 WL 100501, at *5.

### CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART Plaintiff's motion for summary judgment on the issue of attorneys' fees and costs as follows: It awards attorneys' fees in the aggregate amount of **$30,668.50**, and costs in the amount of **$913.20**. Accordingly, for the reasons set forth in this Order, the Court ORDERS that judgment be entered against Defendant in that amount.

The Clerk of Court is further directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:  January 10, 2022
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge